UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ERNEST HUNTER, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil No. 09-1491 (RMC) |
| DISTRICT OF COLUMBIA CHILD AND FAMILY SERVICES AGENCY, | ) ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION**

Ernest Hunter, pro se, sues his employer, the District of Columbia's Child and Family Services Agency ("CFSA"), with a four count Complaint alleging discrimination, retaliation, and a hostile work environment in violation of Title VII, 42 U.S.C. § 2000e-16, as well as a claim under the D.C. Whistleblower Protection Act, D.C. Code § 1-615.54. CFSA moves to dismiss. As explained below, the motion will be granted in part and denied in part. The hostile work environment claim (Count III) will be dismissed for failure to state a claim because the allegations, taken as true, do not meet the legal standard for such a claim. In all other respects, the motion will be denied.

**I. FACTS**

Mr. Hunter, an African American man, is a Contract Compliance Officer with CFSA and he has been employed in this position since April 2007. Am. Compl. [Dkt. # 3] ¶¶ 5, 10. Mr. Hunter's responsibilities include making sure CFSA's Contracts and Procurement Administration complies with applicable rules and regulations. *Id*. ¶ 11. On July 1, 2008, Mr.

Hunter sent a letter to Ronnie Charles, then Senior Deputy Director for Administration at CFSA, complaining about the "lack of experience among staff in key positions, cronyism, gender discrimination in the application of the agency's Alternative Work Schedule Program, unprofessional, negative and malicious behavior and comments from management, discriminatory practices and the lack of adherence to Contracting rules and regulations." *Id*. ¶ 13. Mr. Hunter also claims that Latonya Bryant, then Acting Program Manager at CFSA, attempted to have two other employees "forge funding documents" in anticipation of an audit, and Mr. Hunter informed both his immediate supervisor and Mr. Charles about this. *Id*. ¶¶ 13-14.

Mr. Hunter wrote a second letter of complaint to Mr. Charles, alleging that Ms. Bryant allowed her friends to come to work at various times without consequences while at the same time Ms. Bryant recommended to Mr. Charles that Mr. Hunter's request for an Alternative Work Schedule be denied. *Id*. ¶ 15. This second letter prompted an August 7, 2008, meeting attended by Mr. Hunter, Mr. Charles, Ms. Bryant, and Catherine Higgins, then Acting Contracts Administrator at CFSA. Mr. Hunter complained at that meeting about "mismanagement and circumvention of the rules" and informed the group that he had complained about the alleged forgery to the Office of Inspector General. *Id*. Mr. Charles informed Mr. Hunter that he was to report directly to Latonya Bryant; previously Mr. Hunter reported to Catherine Higgins. *Id*. ¶ 16. Also at the August 7 meeting, Mr. Charles, Ms. Bryant, and Ms. Higgins allegedly disparaged Mr. Hunter's work, and Ms. Bryant and Ms. Higgins unfairly accused Mr. Hunter of being hostile and threatening to coworkers. *Id*.

The next day, August 8, 2010, Mr. Hunter was required to attend a meeting with

Ms. Bryant, Ms. Higgins, human resource specialist Yasmine Mitchell, and an unnamed man who was a "classification generalist." *Id*. ¶ 18. At this meeting, Ms. Bryant accused Mr. Hunter acting in a threatening manner the previous day and ordered Mr. Hunter to take a fitness for duty examination at Mr. Hunter's expense. *Id*. ¶¶ 19-21. CFSA placed Mr. Hunter on administrative leave with pay pending completion of the examination. *Id*. ¶ 21. Mr. Charles and Ms. Higgins allegedly did not authorize the order for a fitness for duty exam. *Id*. ¶ 23.

As a result of the foregoing, Mr. Hunter filed a complaint of discrimination and retaliation with the D.C. Office of Human Rights. On May 26, 2009, the Office of Human Rights sent him a Letter of Determination, indicating a finding of no probable cause. *Id*. ¶ 21. Mr. Hunter sought reconsideration, but the Office of Human Rights never responded. *See* Pl.'s Opp'n [Dkt. # 11] at 2.

Mr. Hunter also alleges that he submitted a letter to the D.C. Office of Risk Management, alleging discrimination and the whistleblower claims. On November 4, 2008 the Office of Risk Management acknowledged receipt of Mr. Hunter's claims but did not take any action. *Id*. ¶ 31.

Consequently, Mr. Hunter filed suit in this Court asserting that he is the victim of race and gender discrimination, a hostile work environment, and retaliation all in violation of Title VII and that he is a victim under the D.C. Whistleblower Protection Act. After filing this suit, Mr. Hunter received a right to sue letter dated December 10, 2009, from the Equal Employment Opportunity Commission ("EEOC"). *Id*. CFSA has moved to dismiss, and Mr. Hunter opposes.

## II. LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the adequacy of a complaint on its face, testing whether a plaintiff has properly stated a claim. Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). A complaint must be sufficient "to give a defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Although a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* The facts alleged "must be enough to raise a right to relief above the speculative level." *Id.* Rule 8(a) requires an actual showing and not just a blanket assertion of a right to relief. *Id.* at 555 n.3. "[A] complaint needs *some* information about the circumstances giving rise to the claims." *Aktieselskabet Af 21. Nov. 2001 v. Fame Jeans, Inc.*, 525 F.3d 8, 16 n.4 (D.C. Cir. 2008) (emphasis in original).

In deciding a motion under Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is "plausible on its face." *Twombly*, 550 U.S. at 570. When a plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged, then the claim

has facial plausibility. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

A court must treat the complaint's factual allegations as true, "even if doubtful in fact." *Twombly*, 550 U.S. at 555. But a court need not accept as true legal conclusions set forth in a complaint. *Iqbal*, 129 S. Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 1950.

### III. ANALYSIS

#### A. *Non Sui Juris*

CFSA first argues that this case should be dismissed because it is *non sui juris*, *i.e.*, it is not an entity that can be sued. Without statutory authority to the contrary, "bodies within the District of Columbia government are not suable as separate entities." *Braxton v. Nat'l Capital Hous. Auth.*, 396 A.2d 215, 216 (D.C. 1978). Thus, in a Title VII case against the District of Columbia, the District is the proper defendant, not its agencies. *Raney v. District of Columbia*, 892 F. Supp. 283, 289 (D.D.C. 1995). However, when a plaintiff proceeds pro se, a court liberally construes his pleadings. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). When a pro se plaintiff erroneously names a D.C. agency instead of the District of Columbia itself, it is appropriate to automatically substitute the District for its agencies. *See, e.g., Ennis v. Lott*, 589 F. Supp.3d 33, 37 (D.D.C. 2008). Accordingly, the Court construes Mr. Hunter's pro se

complaint as intending to state claims against the District of Columbia, and the District will be substituted for CFSA as the defendant in this action.

### B. Exhaustion

The District initially argued that this case should be dismissed for failure to exhaust administrative remedies because Mr. Hunter failed to allege that had he received a right-to-sue letter from the EEOC. In response, Mr. Hunter indicates that after his filed the Complaint on August 7, 2009, he received a right-to-sue letter from the EEOC dated December 10, 2009. *See* Pl.'s Opp'n [Dkt. # 11] 2. The District does not contest this fact in its Reply and thus the exhaustion argument is deemed abandoned.

### C. Hostile Work Environment

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating on the basis of race, color, religion, sex, or national origin in hiring decisions, compensation, terms and conditions of employment, and classifying employees in a way that would adversely affect their status as employees. 42 U.S.C. § 2000e-16. The Supreme Court has determined that "[t]he phrase 'terms, conditions, or privileges of employment' evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986)). Therefore, Title VII is violated when a plaintiff demonstrates that the "workplace is permeated with discriminatory intimidation, ridicule, and insult" and that this behavior is "sufficiently severe or pervasive [as] to alter the conditions of the victim's employment and create an abusive working environment." *Id.* at 21. To establish a prima facie

hostile work environment claim, a plaintiff must demonstrate (1) that he is a member of a protected class, (2) that he was subject to unwelcome harassment, (3) that the harassment occurred because of his race or gender, (4) that the harassment affected a term, condition, or privilege of employment, and (5) that the employer knew or should have known of the harassment, and failed to act to prevent it. *Lester v. Natsios*, 290 F. Supp. 2d 11, 22 (D.D.C. 2003) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)).

In determining whether a hostile work environment claim is substantiated, a court must look at all the circumstances of the plaintiff's employment, specifically focusing on such factors as the frequency of the discriminatory conduct, its severity, whether it was threatening and humiliating or was merely offensive, and whether it unreasonably interfered with the employee's work performance. *Harris*, 510 U.S. at 23. The conduct must be sufficiently extreme to constitute an alteration in the conditions of employment, so that Title VII does not evolve into a "general civility code." *Faragher v. Boca Raton*, 524 U.S. 775, 788 (1998). Consequently, " 'mere utterance of an . . . epithet which engenders offensive feelings in an employee' does not sufficiently affect the conditions of employment to implicate Title VII." *Harris*, 510 U.S. at 21 (quoting *Meritor*, 477 U.S. at 91). Further, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher*, 524 U.S. at 778. A plaintiff must demonstrate that the alleged events leading to the hostile work environment were connected, since "discrete acts constituting discrimination or retaliation claims . . . are different in kind from a hostile work environment claim" that must be based on severe or pervasive discriminatory intimidation or insult. *Lester*, 290 F. Supp. 2d at 33 (citing *AMTRAK v. Morgan*,

536 U.S. 101, 115-16 (2002)). "Workplace conduct is not measured in isolation." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001).

For example, in *George v. Leavitt*, 407 F.3d 405 (D.C. Cir. 2005), the D.C. Circuit held that statements by three employees over a six-month period telling a plaintiff to "go back where she came from," separate acts of yelling and hostility, and allegations that the plaintiff was not given the type of work she deserved, were isolated instances that did not rise to the level of severity necessary to find a hostile work environment. *Id*. at 416-17. Similarly, in *Singh v. United States House of Representatives*, 300 F. Supp. 2d 48 (D.D.C. 2004), this Court found that a plaintiff's allegations that her employer humiliated her at important meetings, screamed at her in one instance, told her to "shut up and sit down" in one instance, and was "constantly hostile and hypercritical" did not amount to a hostile work environment, even though these actions may have been disrespectful and unfair. *Singh*, 300 F. Supp. 2d at. 54-57; *accord Bryant v. Brownlee*, 265 F. Supp. 2d 52, 64 (D.D.C. 2003) (finding no hostile work environment where a coworker referred to the plaintiff as "nigger" and shouted at her and where another coworker stated that white men were first and black women were "at the bottom"; the plaintiff's other allegations of harassment lacked race or age-based overtones and instead revealed job-related tensions and personality conflicts).

Mr. Hunter's harassment claim must be dismissed because he does not allege conduct sufficiently severe or pervasive as to constitute a hostile work environment. Mr. Hunter alleges "gender discrimination in the application of the agency's Alternative Work Schedule Program, unprofessional, negative and malicious behavior and comments from management, discriminatory practices and the lack of adherence to Contracting rules and regulations." Am.

Compl. ¶ 13. He also asserts that at the August 7 meeting, Mr. Charles, Ms. Bryant, and Ms. Higgins unjustly disparaged his work and accused him of being hostile and threatening to coworkers. *Id*. ¶ 16. Finally, he complains that (1) he was denied an Alternative Work Schedule when one was granted to others and (2) he was required to take a fitness for duty exam at his own expense. *Id*. ¶¶ 13, 15, 21. Even presuming these allegations are true, to survive a motion to dismiss the Amended Complaint must state a claim that is "plausible on its face," *Twombly*, 550 U.S. at 570, that is, it must state a claim that is more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S.Ct. at 1949. The allegations of the Amended Complaint are insufficiently severe and insufficiently pervasive to state a claim for an hostile work environment. Count III of the Amended Complaint will be dismissed for failure to state a claim.

### D. Discrimination

To establish a prima facie case of discrimination, a plaintiff must show 1) that he is a member of a protected class; 2) that he suffered an adverse personnel action; 3) under circumstances giving rise to an inference of discrimination. *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999). "[N]ot everything that makes an employee unhappy" is an adverse action under Title VII. *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996); *accord Russell v. Principi*, 257 F.3d 815, 818 (D.C. Cir. 2001). "Actions short of an outright firing can be adverse within the meaning of Title VII, but not all lesser actions by employers count." *Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002). Some types of adverse actions are obvious, such as discharge or failure to promote. For those that are less clear, a plaintiff must show an action with "materially adverse consequences affecting the terms, conditions, or privileges of her employment or her future employment opportunities." *Brown*, 199 F.3d at 457. The

employment decision must inflict "objectively tangible harm." *Russell,* 257 F.3d at 818. "An employment decision does not rise to the level of an actionable adverse action . . . unless there is a tangible change in the duties or working conditions constituting a material employment disadvantage." *Stewart v. Evans*, 275 F.3d 1126, 1134 (D.C. Cir. 2002) (citation omitted).

The District alleges that Mr. Hunter has not stated a claim for discrimination because he has not alleged any adverse personnel action. The District points to cases finding, on summary judgment, that paid leave with the requirement to take a fitness for duty exam, standing alone, does not constitute a materially adverse action. *See, e.g., Nichols v. Southern Illinois Univ.*, 510 F.3d 772, 786-87 (7th Cir. 2007); *Schoffstall v. Henderson*, 223 F.3d 818, 825 (8th Cir. 2000); *Talavera v. Fore*, 648 F. Supp. 2d 118, 128-29 (D.D.C. 2009); *Franklin v. Potter*, 600 F. Supp. 2d 38, 67-68 (D.D.C. 2009).

Unlike those cases, however, the District has filed a motion to dismiss before any discovery. The issue of whether a particular employment action is materially adverse is fact intensive and "depends of the circumstances of the particular case." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 71 (2006). For example, in *Franklin v. Potter*, the district court granted summary judgment to the defendant employer based on the circumstances of that case — finding that summary judgment was warranted because the plaintiff had not produced any evidence that the fitness for duty exams he was required to undergo were particularly grueling or humiliating or produced any injury or harm. 600 F. Supp. 2d at 67. Discovery may or may not show that the fitness exam caused Mr. Hunter any particular injury or harm. Also, Mr. Hunter has not alleged *only* that he was required to take a fitness for duty exam; he also alleges that the exam was required *at his own expense.* Am. Compl. ¶ 21.

Mr. Hunter also alleges that his superiors denied his request for an Alternative Work Schedule while approving requests by other employees, *see* Am. Compl. ¶ 15, and he wrote a letter to Mr. Charles complaining about gender discrimination in the application of the agency's Alternative Work Schedule Program. *Id*. ¶ 13. Construing the Amended Complaint liberally in favor of Mr. Hunter who is acting pro se, *see Haines*, 404 U.S. at 520, the Amended Complaint can be read to allege that the denial of the Alternative Work Schedule was based on Mr. Hunter's gender. The District contends that a denial of a request for a schedule change cannot constitute discrimination, relying on *Jackson v. Acedo*, Civ. No. 08-1941, 2009 WL 2619446, *5 (D.D.C. 2009). *Jackson* is distinguishable, however, since in that case the district court dismissed the discrimination claim because the plaintiff did not allege that the denial of her request for a schedule change was based on her race or gender. Also, as explained above, whether an alleged adverse action produces any actual "objectively tangible harm," *Russell,* 257 F.3d at 818, depends on the circumstances of the case. *See Burlington*, 548 U.S. at 71. The circumstances of this case are not known at this time because no discovery has taken place. In this pro se case, the allegations that Mr. Hunter was required to undergo a fitness for duty exam at his own expense and that he was denied an alternative work schedule are sufficient to withstand the District's motion to dismiss. The District's motion to dismiss Count I (discrimination) will be denied.

### E. Retaliation

Title VII prohibits an employer from retaliating against an employee because he "has opposed any practice made an unlawful employment practice by this title, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding,

or hearing under this title." 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, a plaintiff must show that: 1) he engaged in protected activity; 2) he suffered from a materially adverse act; and 3) a causal connection exists between the protected activity and the employer's act. *See Holcomb v. Powell*, 433 F.3d 889, 901-02 (D.C. Cir. 2006). A plaintiff must show that the employer's actions "would have been materially adverse to a reasonable employee." *Burlington*, 548 U.S. at 57. "[A]n employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id*. The employer's action must have been "materially" adverse because the statute protects employees from significant harms and does not protect an employee from "those petty slights or minor annoyances that often take place at work and that all employees experience." *Id*. at 68. Further, an objective "reasonable person" standard applies. *Id*. Employees are not protected from "all retaliation, but from retaliation that produces an injury or harm." *Id*. at 67.

The District contends that the retaliation claim should be dismissed for the same reasons that the discrimination should be dismissed — because a requirement to take a fitness for duty exam and the denial of a request for a change in schedule do not constitute adverse employment actions. The motion to dismiss Count II (retaliation) will be denied for the same reasons that the motion to dismiss the Count I (discrimination) was denied.

### F. Attorney Fees

The District also moves to dismiss the request for attorney's fees set forth in the Amended Complaint's prayer for relief because a pro se plaintiff may not recover attorney's fees for representing himself. *See Kay v. Ehler*, 499 U.S. 432, 435-38 (pro se plaintiff could not

recover attorney fees under 42 U.S.C. § 1988 for representing himself even when the plaintiff was in fact an attorney). In a Title VII action such as this one, a court, in its discretion, may award reasonable attorney's fees to the prevailing party. *See* 42 U.S.C. § 2000e-5(k). It has yet to be determined whether Mr. Hunter will be the prevailing party in this action, and Mr. Hunter could, at any time, retain an attorney to represent him, in which case he could recovery attorney's fees. The District's motion to dismiss the request for attorney fees will be denied as premature.

## IV. CONCLUSION

For the reasons stated above, Defendant's motion to dismiss [Dkt. # 9] will be granted in part and denied in part. Count III of the Amended Complaint, the hostile environment claim, will be dismissed. The motion to dismiss is denied in all other respects. The following Counts remain: Count I (discrimination); Count II (retaliation) and Count IV (violation of the D.C. Whistleblower Protection Act). The Court expresses no opinion regarding whether Counts I, II, or IV will survive summary judgment or will succeed at trial. A memorializing Order accompanies this Memorandum Opinion.


Date: May 11, 2010 /s/
ROSEMARY M. COLLYER
United States District Judge