UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ERNEST HUNTER,<br><br>    Plaintiff,<br><br>    v.<br><br>DISTRICT OF COLUMBIA,<br><br>    Defendants. | Civil Action No. 09-01491 (ABJ) (AK) |

**REPORT AND RECOMMENDATION**

Plaintiff Ernest Hunter ("Hunter" or "Plaintiff"), who is proceeding *pro se*, brings this action against Defendant District of Columbia ("the District" or "Defendant"). Plaintiff filed a Motion for Summary Judgment [51] ("Pl.'s Mot.") and Defendant filed a Cross-Motion for Summary Judgment [66] ("Def.'s Mot."). For the reasons set forth below, the undersigned recommends that Plaintiff's Motion be denied and Defendant's Motion be granted-in-part and denied-in-part.

**I.  BACKGROUND**

This case stems from Plaintiff's employment as a Contract Compliance Officer with the District of Columbia Child and Family Services Agency ("CFSA"). (Am. Comp. [20] at 4.) Acts of Plaintiff relevant to the case began on July 1, 2008, when Plaintiff wrote a letter to Ronnie Charles ("Charles"), who was the Senior Deputy Director for Administration of CFSA. (Pl.'s Mot. at 4; Pl.'s Mot., Ex. 4). Plaintiff's letter complained of "discrimination, cronyism and

mismanagement within CFSA, as well as issues involving a performance evaluation of Plaintiff and the denial of Plaintiff's request for an alternative work schedule ("AWS"). (Pl.'s Mot. at 4; Am. Compl. at ¶ 19; Def.'s Mot. at 2.) Plaintiff submitted an application for AWS on June 13, 2008, and received notification on July 8, 2008, that the application was denied. (Pl.'s Mot., Ex. 10 at 4.)

On July 28, 2008, in an email to "Hotline Inspector General," Plaintiff complained of abuses of authority within CFSA, including "fraudulent funding documents." (Pl.'s Mot. at 4; Pl.'s Mot., Ex. 5.)

On August 6, 2008, Plaintiff wrote a second letter to Charles addressing similar issues as his first letter to Charles. (Pl.'s Mot. at 4; Pl.'s Mot., Ex. 6.) A meeting was held on August 7, 2008, with Plaintiff, Charles, Plaintiff's immediate supervisor Catherine Higgins ("Higgins"), and the Supervisory Management Services Liaison LaTonya Bryant ("Bryant"), to discuss the letters. (Pl.'s Mot. at 4-5; Def.'s Mot. at Ex. H.) The meeting became contentious, and Charles subsequently made a complaint about Plaintiff's behavior to the Human Resources Department. (Pl.'s Mot. at 4; Def.'s Mot. at 4.) Charles described Plaintiff as exhibiting erratic and threatening behavior, while Bryant described Plaintiff's behavior at the meeting as aggressive and belligerent. (Def.'s Mot. at 4, Ex. H at 1-2.)

After the meeting, Plaintiff sent an email to Roque Gerald, the Director of CFSA, alleging that Charles and others in management at CFSA were abusing their authority. (Pl.'s Mot. at 4; Pl.'s Mot., Ex. 8.) Plaintiff lists various examples of abuses both against Plaintiff and in general. (*Id.*)

Also following the meeting, Charles directed Human Resources to prepare a letter that

Bryant signed placing Plaintiff on paid Administrative Leave pending completion of a "Fitness for Duty" examination, to be conducted at Plaintiff's expense. (Def.'s Mot. at 4-5; Hr'g, July 30, 2012.) Plaintiff was placed on Administrative Leave on August 8, 2012. (Def.'s Mot. at 5.) Plaintiff completed the Fitness for Duty examination on August 18, 2008 and he was declared fit and he returned to work. (Pl.'s Mot. at 8-9.)

Plaintiff filed an official complaint with the D.C. Office of Human Rights in September 2008 (*see* Pl.'s Mot., Ex. 9), and a complaint with the Equal Employment Office ("EEO") in November 2008 (*see* Pl.'s Mot., Ex. 22), both alleging gender discrimination and retaliation. (Pl.'s Mot. at 9.) Plaintiff's complaint before the D.C. Office of Human Rights was denied on May 26, 2009 (Pl.'s Mot., Ex. 10).

Plaintiff continued in his employment, and on January 5, 2010, he received an evaluation from Jacque McDonald, the Contracts Manager, and Tara Sigamoni, the Chief Contracting Officer. (Pl.'s Mot. at 17, Ex. 29.) The evaluation rated Plaintiff no lower than a "Valued Performer" in every category. (Pl.'s Mot. at Ex. 29.) The evaluation did, however, include a comment that some internal customers believed Plaintiff's demeanor did not reflect good customer service. (*Id.* at 2.)

Plaintiff challenged the comments in a January 21, 2010, letter to Dexter Starkes, the Labor and Relations Manager for CFSA. (Pl.'s Mot. at 18.) On March 3, 2010, Plaintiff sent a letter to Gerald, discussing the comments in the evaluation and alleging other issues with Sigamoni. (*Id.*; Pl.'s Mot., Ex. 31.) A meeting was held on March 9, 2010, that included McDonald, Starkes, and Sigamoni, but not Gerald. (Pl.'s Mot. at 18.) At the meeting, McDonald agreed to remove the comments. (*Id.*)

On April 28, 2010, Gerald and others met with Plaintiff (Pl.'s Mot. at 19.) On May 3, 2010, Plaintiff wrote a letter to Ray Davidson, the Chief Administrative Officer at CFSA, alleging a difference between the method used to calculate his tenure and the method used for newer employees hired by Sigamoni. (Pl.'s Mot., Ex. 36.)

On May 6, 2010, Plaintiff was given a Reduction in Force notice. (Pl.'s Mot., Ex. 37.) Plaintiff was placed on immediate Administrative Leave. (Pl.'s Mot. at 21.) He was terminated on June 11, 2010.

On November 4, 2010, Plaintiff Amended his Complaint ("Third Amended Complaint") in this case to add the reduction in force notice and subsequent termination. (Am. Compl. [20]). The Third Amended Complaint included claims for: (1) gender discrimination under 42 U.S.C. § 1983; (2) retaliation under 42 U.S.C. § 1981; (3) hostile work environment; (4) violation of the D.C. Whistleblower Protection Act; (5) violation of the D.C. Human Rights Act; and (6) violation of Plaintiff's Fifth Amendment due process rights.

Defendant filed a Motion to Dismiss the Third Amended Complaint, and Judge Amy Berman Jackson ruled on the Motion to Dismiss on July 15, 2011. (Order granting Motion to Dismiss certain claims from the third amended complaint [41].) Judge Jackson dismissed the claims for hostile work environment and for violations of due process rights. (*Id.*) For the discrimination and retaliation claims, Judge Jackson treated the complaint as raising two causes of action, one for acts that took place in 2008 ("2008 acts") and one for acts that took place in 2010 ("2010 acts"). (*Id.* at 14.) Judge Jackson found that Plaintiff had not exhausted his administrative remedies as to the 2010 acts and granted the Motion to Dismiss as to Plaintiff's discrimination and retaliation claims based on the 2010 acts. (*Id.*)

## II.  STANDARD OF REVIEW

Under Federal Rules of Civil Procedure 56, summary judgment is appropriate where the documents in the record show no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a), (c).  The moving party is responsible for informing the court of the basis for its motion and identifying portions of the record that demonstrate the absence of any genuine dispute of a material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  To be material, a fact must affect the outcome of the case and relate to the substantive law governing the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986).

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the non-moving party's favor and accept the nonmoving party's evidence as true.  *Anderson*, 477 U.S. at 252.  The non-moving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position.  *Id.*  The non-moving party must establish "sufficient evidence" to favor the jury returning a verdict for the non-moving party.  *Id.* (citation omitted).

## III.  DISCUSSION

Plaintiff presents no evidence that, since Judge Jackson's ruling on the Motion to Dismiss, he has further exhausted his administrative remedies regarding the alleged discrimination and retaliation based on the 2010 acts.  Accordingly, the undersigned recommends there is no basis for Judge Jackson to change her ruling on Defendant's Motion to Dismiss.  The remaining claims are as follows: (1) gender discrimination based on the 2008 acts; (2) retaliation based on the 2008 acts; (3) violation of the D.C. Whistleblower Protection Act based on the 2008

and 2010 acts; and (4) violation of the D.C. Human Rights Act based on the 2008 and 2010 acts.

### A. Gender Discrimination

To establish a prima facie case of gender discrimination, a plaintiff must show (1) an adverse employment action against the plaintiff; and (2) that the adverse employment action was taken because of the plaintiff's gender. *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2009). Plaintiff alleges that he experienced gender-based discrimination on two separate occasions in 2008. The first event was the denial of his initial AWS request ("AWS denial"). The second event included both the ten-day period of Administrative Leave and accompanying Fitness for Duty examination ("Leave and Examination"), which together will be considered part of the same event. The undersigned finds no gender-based discrimination in either event.

#### 1. Adverse Employment Action

Not every action against an employee qualifies as an adverse employment action under Title VII. *Forkkio v. Powell*, 306 F.3d 1127, 1130 (D.C. Cir. 2002). "An employee suffers an adverse employment action if he experiences materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm." *Id.*; *see Brown v. Brody*, 199 F.3d 446, 457 (D.C. Cir. 1991). Examples include "hiring, firing, failure to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S. Ct. 2257 (1998). Dissatisfaction with a reassignment, public humiliation, loss of reputation or other "purely speculative injuries" are not "adverse employment actions." *Forkkio*, 306 F.3d at 1131.

Plaintiff has failed to show that the AWS denial was an adverse employment action.

6

When the AWS denied occurred, he did not receive a reduction in pay or benefits and did not see a change in his job description, status or responsibilities. The denial of Plaintiff's request to work at home as opposed to the office cannot be characterized as an adverse employment action. It might be a convenience to Plaintiff if granted, but by any stretch, it cannot be construed as an adverse employment action. *See Brown v. Georgetown Univ. Hosp. Medstar Health*, 828 F. Supp. 2d 1, (D.D.C. 2011) ("[a] scheduling dispute, without evidence of a material change in responsibilities or employment status, is not an adverse employment action.")  Plaintiff provided no evidence of any harm, but if there was harm to the Plaintiff, it would have been minimal because Plaintiff reapplied for AWS approximately three months after it was denied and his second application was granted. (*See* Pl.'s Mot., Ex. 10 at 4.) The undersigned recommends that Plaintiff's discrimination claim based on the denial of AWS be denied.

      Plaintiff has also failed to show that the Leave and Examination constituted an adverse employment action. Plaintiff offers spreadsheets listing disciplined employees and the discipline they received. (Pl.'s Mot., Ex. 56-60.) He argues that "many employees had conduct and performance problems within the agency" and "were not subject [sic] to such extreme orders." (Pl,'s Mot. at 37.)   The spreadsheets show, as Plaintiff suggests, that Defendants had a range of possible punishments they could have imposed other than Administrative Leave. (*See id.*) They do not establish, however, that Administrative Leave and a Fitness for Duty Examination is a disciplinary action. None of the spreadsheets the Plaintiff submitted record either Administrative Leave or a Fitness for Duty examination as punitive consequences. (Pl.'s Mot., Ex. 56-60.) Therefore, the placement on Administrative Leave and the Fitness for Duty examination was not an adverse employment action or punitive consequences, but were instead administrative actions.

### 2. Absence of Gender-based Discrimination

Even if the AWS denial or the Leave and Examination can be characterized as adverse employment actions, Plaintiff's claims fail because he did not experience discrimination on the basis of gender. Plaintiff argues that the AWS denial occurred because of his gender, presenting evidence that a female employee in the same office as Plaintiff was participating in AWS at the time his request was denied. (Pl.'s Reply at 9; Pl.'s Mot., Ex. 2 at 3.) However, when Plaintiff requested AWS three months later, he was granted on the same day he applied. (Pl.'s Mot., Ex.10 at 4.; Def.'s Mot., Ex. N). Given that AWS was subsequently granted at Plaintiff's second application, he did not experience gender discrimination.

Additionally, Plaintiff argues that he was discriminated against on the basis of gender when he received the placement of Leave and Examination. (Third Am. Compl. at ¶ 42; Pl.'s Reply at 9.) Plaintiff was placed on Administrative Leave in response to the August 7, 2008, meeting (Pl.'s Mot. at 6; Def's Mot. at 4.), without any reference to Plaintiff's gender. Plaintiff was provided two letters informing him of his placement on Administrative Leave. (Pl.'s Mot., Exs. 12 and 13.) Both letters contain the same language, citing Plaintiff's "erratic behavior" at the August 7, 2008, meeting and his "refusal of supervision and [] contentious and threatening demeanor towards other employees" as the basis for Administrative Leave. (*Id.*) The letters provide no support for Plaintiff's claim of gender discrimination.

While Plaintiff offered the previously mentioned spreadsheets as evidence of disciplinary consequences, these also do not suggest gender-based discrimination. The names of the employees are redacted, and though the spreadsheets have a few gender-specific pronouns, it is not possible to identify the gender of every employee. (Pl.'s Mot., Ex. 56-60.) The spreadsheets

do not establish, however, any pattern of women receiving different treatment from men or that Plaintiff was treated differently because of his status as a male. (*See id.*)

Finally, Jacque McDonald states in an affidavit presented in the record that Plaintiff "was treated different than other employees," but McDonald offers no evidence to support the claim that the different treatment was because of Plaintiff's gender. (Pl.'s Mot., Ex. 2 at 3-4.) In sum, Plaintiff has failed to provide any factual support for his allegation that sex discrimination played a role in the placement on Leave and Examination.

The undersigned recommends that Defendant's Cross-Motion for Summary Judgment be granted as to Plaintiff's gender discrimination claim.

**B. Retaliation under Title VII**

Plaintiff argues that Defendant retaliated against him in violation of Title VII after he complained of misconduct within the CFSA. (Am. Compl. at ¶¶ 48-49; Pl.'s Mot., at 37-38.) Similar to his gender-based discrimination claims, he cites the AWS denial and the Leave and Examination as the retaliatory events. In order for a retaliation claim to prevail on a motion for summary judgment, it must be established that the plaintiff: (1) engaged in protected activity; (2) was subjected to an adverse employment action; and (3) can show a causal link between the protected activity and the adverse action. *Hamilton v. Geithner*, 666 F.3d 1344, 1357 (D.C. Cir. 2012) (citation omitted).

The Supreme Court has noted that the requirements for a Title VII retaliation claim are similar to, but not the same as, the requirements for a discrimination claim. *Burlington N. & Santa Fe Ry. Co.v. White*, 548 U.S. 53, 67, 126 S. Ct. 2405, 2414 (2006). For retaliation, "a plaintiff must show that a reasonable employee would have found the challenged action

9

materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68. (quotations omitted). The Supreme Court uses "materially adverse" to emphasize the difference between significant and trivial harms, but also notes that the context of the alleged retaliation matters. *Id.* at 69. The Court uses the example of an employer changing an employee's schedule, which would not be material to most workers, but may make a large difference to a mother with school-age children. *Id.*

Assuming arguendo that Plaintiff's complaints to his employer were protected activities, Plaintiff's retaliation claim still fails because he was not subjected to an adverse employment action. Additionally, even if the AWS denial and Leave and Examination are characterized as adverse, Plaintiff has not demonstrated a sufficient causal link between his complaints and the subsequent events.

### 1. Adverse Employment Action

Plaintiff has failed to demonstrate why either the AWS denial or the Leave and Examination qualify as adverse employment events under Title VII. The undersigned has previously recommended that the AWS denial did not rise to the level of an adverse employment action for Plaintiff's discrimination claim. Similarly, the AWS denial is not an adverse employment action for purposes of Plaintiff's retaliation claim. A reasonable employee would not have been dissuaded from making or supporting a charge of discrimination solely because his superiors did not allow him to work an alternative schedule. Plaintiff's initial request for AWS was denied, but his second request was granted. His claim that the initial denial was retaliation and discrimination is specious. Thus, the undersigned also recommends that Plaintiff's claim for

retaliation based on the initial denial of AWS be denied.

Plaintiff also alleges that he was subjected to retaliation when he was placed on Administrative Leave and received a Fitness for Duty examination. It might be argued that placement on Administrative Leave constitutes an adverse employment action if an employee's duties were significantly changed upon return from administrative leave or if the leave was unpaid. In *Burlington*, the Supreme Court upheld the jury's verdict that the reassignment of the plaintiff's duties and the suspension of the plaintiff for 37 days without pay were materially adverse and qualified as adverse employment actions.[1] 548 U.S. at 53. In contrast, the plaintiff in *Brown v. Georgetown Univ. Hosp. Medstar Health*, a health care worker, was suspended with pay for 11 days after she allegedly became argumentative with a patient's relatives and "refused to get another member of staff to replace her at the patient's request." 828 F. Supp. 2d 1, 9 (D.D.C. 2011). Her suspension did not constitute an adverse employment action because she did not suffer a change in employment status and continued to receive full pay and benefits during and after her suspension. *Id. See also Moran v. U.S. Capitol Police Bd.*, 820 F. Supp. 2d 48, 58 (D.D.C. 2011) ("[p]aid suspension alone is not enough to rise to the level of materially adverse unless it causes some further harm or hardship.")

Plaintiff in this case was placed on paid Administrative Leave for ten days. (Pl.'s Mot. at 8-10, Def.'s Mot. at 5.) He completed the required Fitness for Duty examination within the allotted ten-day period. (Def.'s Statement of Material Facts not in Dispute at ¶ 20.) At the motions hearing held on July 30, 2012, Plaintiff stated that his personal doctor conducted the

---

[1]The Supreme Court also noted that the plaintiff eventually received back pay for the time she was suspended, but she was still harmed by the physical and emotional hardship of losing her income for the period of her suspension.

Fitness for Duty examination within one hour, and that Plaintiff was charged for the co-pay for the examination. (Hr'g, July 30, 2012.) Given that Plaintiff was paid during his Administrative Leave, being charged for the co-pay does not create an employment action that is materially adverse.

Plaintiff returned to work after the Administrative Leave, and he presents no evidence that his duties were changed upon his return. Nor does he allege that he suffered any harm after returning to work because of his Administrative Leave. Accordingly, the undersigned recommends relying on the case law in this Circuit, that paid Administrative Leave and a Fitness for Duty examination does not constitute an adverse employment action.

### 2. Absence of Causal Link

Even if the AWS denial and Leave and Examination can be construed as adverse employment events under Title VII, Plaintiff has insufficiently established a link between those actions and his protected activity of complaining to his supervisors. To succeed in a Title VII claim, the Plaintiff must show a causal link between the protected activity and the adverse action. *Hamilton v. Geithner*, 666 F.3d 1344, 1357 (D.C. Cir. 2012) (citation omitted).

Plaintiff failed to illustrate a causal connection between his complaints and the AWS denial. According to the chronology of events provided by Plaintiff, the discriminatory AWS policy and his denial was one of his grievances in his July 1, 2008, letter. (Am. Compl. at ¶ 13.) Given that the protected event of complaining to Plaintiff's employer occurred subsequent to the AWS denial, the AWS denial cannot be causally related as a retaliatory event. Additionally, when Plaintiff reapplied for AWS approximately three months after it was denied and following the protected events of complaints and communications to his employer, his second application

was granted. (*See* Pl.'s Mot., Ex. 10 at 4.) Therefore, Plaintiff has not proven a causal link between the protected event of complaining to his supervisor and the AWS denial.

Likewise, Plaintiff failed to demonstrate a causal connection between his complaints and his Leave and Examination. While the Leave and Examination was close in time to the August 7, 2008, meeting, Plaintiff's placement on Administrative Leave and Fitness for Duty examination were precipitated by his behavior and demeanor rather than the protected action of complaining to his supervisor. Plaintiff offered two letters that informed him of his placement on Administrative Leave. (Pl.'s Mot., Exs. 12 and 13.) Both letters contain the same language citing Plaintiff's "erratic behavior" at the August 7, 2008, meeting and his "refusal of supervision and [] contentious and threatening demeanor towards other employees" as the basis for administrative leave. (*Id.*) Therefore, superceding causes exist for the supervisors' actions, damaging any potential causal link between Plaintiff's complaining and the Leave and Examination. Even if the AWS denial or the Leave and Examination were to be construed as adverse employment actions, the undersigned recommends that the Plaintiff has failed to demonstrate a causal link between them and the protected activity.

### C. State Law Claims

As noted above, the undersigned recommends that Plaintiff's federal Title VII claims be dismissed, leaving only the state law claims. A federal court has discretion to dismiss the case, exercise jurisdiction over the remaining state-law claims, or decline to exercise jurisdiction over the state-law claims. *See also* 28 U.S.C. § 1367(c)(3). The Supreme Court has provided guidance to the lower courts on how to exercise their discretion when confronted with claims of federal and pendant jurisdiction and deciding whether or not to dismiss the state law claims. In

considering and balancing factors, the Court held that "[i]t has consistently been recognized that pendant jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants." *United Mineworkers v. Gibbs*, 383 U.S. 715, 725 (1966). The Court found that "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Id.* The Supreme Court also noted that if state issues are substantial, the claims can be dismissed without prejudice. *Id. See also Shekoyan v. Sibley International*, 409 F.3d 414, 424 (D.C. Cir. 2005) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7, 108 S.Ct. 614 (1988). Where the claims present novel or complex issues of State law, discretion further weighs in favor of declining to exercise jurisdiction. 28 U.S.C. § 1367(c)(1); *Cannon v. District of Columbia*, No. 12-cv-133, 2012 WL 2673097 at *12 (D.D.C. July 6, 2012).

The D.C. Whistleblower Protection Act, D.C. Code § 1-615.53, presents an undeveloped body of law that is more suitable for adjudication in Superior Court. *Cannon*, 2012 WL 2673097 at *12 (remanding D.C. Whistleblower Protection Act given the undeveloped state of the law); *Lowe v. District of Columbia*, 669 F. Supp. 2d 18, 32 (D.D.C. 2009) (same); *Terrell v. District of Columbia*, 703 F. Supp. 2d 17, 23 (D.D.C. 2009) ("[r]etaining jurisdiction over plaintiffs' state-law claims would require the Court to make substantive conclusions of law with regard to the District of Columbia Whistleblower Protection Act.")

Judicial discretion also weighs in favor of declining to exercise jurisdiction over Plaintiff's claims under the D.C. Human Rights Act. *See Anderson v. Holder*, 647 F.3d 1165, 1174 (D.C. Cir. 2011) ("with no federal claims remaining in the case, the district court also properly declined to exercise supplemental jurisdiction over Anderson's claim under the D.C.

Human Rights Act."); *Mitchell v. Yates*, 402 F. Supp. 2d 222, 229 n.4 (D.D.C. 2005) (remanding D.C. Human Rights Act claims for resolution in Superior Court after dismissing federal claims under the Americans with Disabilities Act). Accordingly, the undersigned recommends that the Court decline to exercise jurisdiction over Plaintiff's state law claims.

## IV. RECOMMENDATION

The undersigned recommends that Plaintiff's Motion for Summary Judgment be denied. The undersigned recommends that Defendant's Motion for Summary Judgment be granted as to Plaintiff's claims for gender discrimination and retaliation under Title VII. The undersigned also recommends that the Court decline to exercise jurisdiction over Plaintiff's remaining state law claims under the D.C. Human Rights Act and the D.C. Whistleblower Protection Act claims and that the case be dismissed without prejudice. Plaintiff will have thirty days from the date of dismissal to re-file his state law claims in DC Superior Court.

## V. REVIEW BY THE DISTRICT COURT

The parties are hereby advised that under the provisions of Local Rule 72.3(b) of the United States District Court for the District of Columbia, any party who objects to the Report and Recommendation must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the report and/or recommendation to which objection is made, and the basis for such objections. The parties are further advised that failure to file timely objections to the findings and recommendations set forth in this report may waive their right of

appeal from an order of the District Court that adopts such findings and recommendation. *See*

*Thomas v. Arn*, 474 U.S. 140 (1985).



DATE: 12 September, 2012                                       _____/s/_____

                                                                                ALAN KAY
                                                                                UNITED STATES MAGISTRATE JUDGE