# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ )<br>ERNEST HUNTER, )<br>   )<br>          Plaintiff, )<br>   )<br>     v. )<br>   )<br>DISTRICT OF COLUMBIA, )<br>   )<br>          Defendant. )<br>_____) | Civil Action No. 09-1491 (ABJ) |

## MEMORANDUM OPINION

This case is before the Court on plaintiff Ernest Hunter's Motion for Summary Judgment ("Pl.'s Mot.") [Dkt. # 51], and defendant District of Columbia's ("District") Cross-Motion for Summary Judgment ("Def.'s Cross-Mot.") [Dkt. # 66].  This case was referred to Magistrate Judge Alan Kay for full case management, including preparation of a report and recommendation for any dispositive motions pursuant to Local Rule of Civil Procedure 72.3.  On September 13, 2012, Magistrate Judge Kay issued his Report and Recommendation on the two motions, recommending that the Court deny summary judgment for Hunter and grant summary judgment for the District.  Hunter filed timely objections.  Because the Court finds that summary judgment is appropriate, it will adopt the Magistrate Judge's recommendation in full.  It will also adopt the Magistrate Judge's report and incorporate it as part of this opinion.

## BACKGROUND

Ernest Hunter was a contracts compliance officer in the Contracts and Procurement Administration ("CPA") within the District of Columbia Child and Family Services Agency ("CFSA") until he was terminated in May 2010 through what it called a reduction in force

("RIF").  Third Am. Compl. [Dkt. # 28] ¶¶ 5, 7, 34; Letter from Roque Gerald to Ernest Hunter

(May 6, 2010), Ex. 37 to Pl.'s Mot ("RIF Notice).  In this action, he complains about a number

of employment-related events.

 First, Hunter sought to enroll in the CFSA Alternative Work Schedule program ("AWS")

on or about June 13, 2008.  OHR Letter of Determination (May 26, 2009), Ex. 10 to Pl.'s Mot.

("OHR Letter") at 2.  That request was denied on July 8 by email.  Email from LaTonya Bryant

to Ernest Hunter (July 8, 2008), Ex. B to Def.'s Cross-Mot. at 1.  The reason given for the denial

was that Hunter was ineligible for the schedule he had requested.  *Id.*  He reapplied to enroll in

the AWS program in September, and that application was approved.  OHR Letter at 4.

 On July 1, 2008, while Hunter's first AWS request was pending, he submitted a letter to

Ronnie Charles, the Senior Deputy Director for Administration of CFSA.  Pl.'s Mem. of Law in

Support of his Mot. for Summ. J. ("Pl.'s Mem.") [Dkt. # 51] at 4; Letter from Ernest Hunter to

Ronnie Charles (July 1, 2008), Ex. 4 to Pl.'s Mot ("July 1 Letter").  In the letter, Hunter

complained of "discrimination, cronyism, and mismanagement" within CFSA.  July 1 Letter at

1–2.  He also expressed his dissatisfaction with his most recent performance evaluation and with

CFSA's AWS approval process.  *Id.*  That same month, Hunter sent an email to the "Hotline

Inspector General" complaining of abuses of authority within CFSA, including "fraudulent

funding documents."  Pl.'s Mem. at 4.

 A month later, on August 6, 2008, plaintiff wrote a second letter to Mr. Charles,

expressing the same concerns contained in the first letter.  *See* Letter from Ernest Hunter to

Ronnie Charles (Aug. 6, 2008), Ex. 6 to Pl.'s Mot. ("August 6 Letter").  The next day, Hunter

met with his immediate supervisor Catherine Higgins, Ronnie Charles, and the Supervisory

Management Services Liaison, LaTonya Bryant, to discuss his second letter.  Pl.'s Mem. at 4;

OHR Letter at 5; Bryant Decl., Ex. H to Def.'s Mot at 1. The parties disagree as to why the meeting degenerated and who was at fault, but it is undisputed that the meeting became highly contentious. Pl.'s Mem. at 5; Def.'s Mem. of Points and Authorities in Support of Cross-Mot. for Summ. J. ("Def.'s Mem.") at 4. Latonya Bryant describes Hunter's behavior as "angry and agitated," "aggressive and belligerent." Bryant Decl. ¶¶ 6–7. His behavior was described by management as "erratic, hostile, and often explosive," and "aggressive[] toward the persons conducting the meeting, alternatively friendly and cordial one minute and blatantly disrespectful another." Letter from Stan Spaght to Ernest Hunter (Aug. 8, 2008), Ex. 14 to Pl.'s Mot. ("Fitness for Duty Letter") at 1.

After the meeting, Hunter sent an email to the Director of CFSA Roque Gerald, alleging that Charles and other managers were abusing their authority. Email from Ernest Hunter to Roque Gerald (Aug. 7, 2008), Ex. 8 to Pl.'s Mot. Hunter also reported he had already informed the Inspector General that CFSA management had falsified funding documents. *Id.*

Another meeting was held the next day. Pl.'s Mem. at 5; Def.'s Mem. at 4. The participants included Hunter, his union representatives, Ms. Higgins, and representatives from the Human Resources Department. Pl.'s Mem. at 5. At the meeting, Hunter was informed that he would be placed on a ten-day period of paid administrative leave pending his completion of a "fitness for duty" examination because of his behavior at the last meeting. Pl.'s Mem. at 5–6; Def.'s Mem. at 4–5. Hunter also informed those at the meeting about the complaints he had made to the Inspector General. Pl.'s Mem. at 7; Def.'s Mem. at 5.

Hunter was permitted to have his own physician administer the fitness for duty examination. Hearing before Mag. J., July 30, 2012. The exam took approximately ten minutes and Hunter was responsible for the co-payment for the appointment. *Id.* Hunter successfully

completed the fitness for duty examination within the 10 day administrative leave period, and on August 18, 2008, he returned to his prior position.  Pl.'s Mem. at 8–9; Def.'s Mem. at 5.

Hunter filed his original complaint in this Court on August 7, 2009.  [Dkt. # 1].  After filing an official complaint with the D.C. Office of Human Rights and a complaint with the Equal Employment Office, both alleging gender discrimination and retaliation, Hunter filed an amended and second amended complaint in this case.  [Dkt. # 3, 20]; *see* OHR and EEOC Charges of Discrimination, Ex. 24 to Pl.'s Mot.; Pl.'s Mem. at 9.  Both administrative complaints were subsequently denied.  OHR Letter of Determination, Ex. 10 to Pl.'s Mot.; OHR Notice of the Right to File a Discrimination Complaint, Ex. 22 to Pl.'s Mot., EEOC Dismissal and Notice of Rights, Ex. 26 to Pl.'s Mot.

Meanwhile, Hunter remained in his job at CFSA.  The only notable events that occurred between his return on August 18, 2008, and the RIF on May 6, 2010 were:  (1) In January 2010, Hunter successfully challenged a negative comment on a performance evaluation that he had received from Contracts Manager Jacque McDonald and Chief Contracting Officer Tara Sigamoni, *see* Performance Eval. And Tracking Form, Ex. 29 to Pl.'s Mot.; Letter from Ernest Hunter to Dexter Starkes (Jan. 21, 2010), Ex. 31 to Pl.'s Mot.; Pl.'s Mem. at 17–18, and (2) in May 2010, Hunter wrote a letter to the Chief Administrative Officer at CFSA challenging the method used to calculate his tenure in relation to the method used for newer employees.  Letter from Ernest Hunter to Ray Davidson (May 3, 2010), Ex. 36 to Pl.'s Mot.

On May 6, 2010, Hunter received a Reduction in Force notice.  RIF Notice.  He was placed on immediate administrative leave until June 11, 2010, when he was terminated.  Pl.'s Mem. at 21; RIF Notice.

Hunter filed the Third Amended Complaint in this case on November 4, 2010 naming the District of Columbia as the sole defendant.  The complaint alleged that defendant violated Title VII of the Civil Rights Act of 1964 by engaging in disparate treatment on the basis of gender (Count I), retaliation (Count II), and hostile work environment (Count III); the D.C. Whistleblower Protection Act (Count IV); the D.C. Human Rights Act (Count V); and the Fifth Amendment of the Constitution of the United States (Count VI).  Third Am. Compl. ¶¶ 38–70. Defendant filed a motion to motion to dismiss, which the Court granted in part.  Order (July 15, 2011) [Dkt. # 41].  The Court dismissed the claims for hostile work environment and for violation of the Fifth Amendment.  *Id.*  For the discrimination and retaliation claims, the Court divided the allegedly unlawful acts into two categories:  the 2008 acts and the 2010 acts.  *Id.* The Court dismissed the claims to the extent that they were based on the 2010 acts for failure to exhaust administrative remedies.  *Id.*  Thus, the only claims that remain are for disparate treatment (Count I) and retaliation (Count II) under Title VII relating to the 2008 acts, violation of the D.C. Whistleblower Protection Act (Count IV), and violation of the D.C. Human Rights Act (Count V).  *Id.*

After Hunter filed the Third Amended Complaint, the Court granted a motion to withdraw filed by his attorney, and Hunter notified the Court of his desire to proceed *pro se*. [Dkt. # 36, 37].  On October 12, 2011, the Court referred the case to a Magistrate Judge for full case management, including preparation of a report and recommendation for any dispositive motions under Local Rule of Civil Procedure 72.3.  The parties cross-moved for summary judgment and the Magistrate Judge issued his Report and Recommendation, recommending that the Court deny Hunter's motion for summary judgment and grant the District's cross-motion. Hunter has objected to the Magistrate Judge's recommendation.

**STANDARD OF REVIEW**

When a party objects to a magistrate judge's recommendation, the court "must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3); *see also Smith v. District of Columbia*, 846 F. Supp. 2d 197, 198 (D.D.C. 2012); *D.D. ex rel. Davis v. District of Columbia*, 470 F. Supp. 2d 1, 1 (D.D.C. 2007).  The Court may "accept, reject, or modify" the magistrate judge's recommendation, "receive further evidence," or "return the matter to the magistrate judge with instructions."  Fed. R. Civ. P. 72(b)(3).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  To defeat summary judgment, the non-moving party must "designate specific facts showing there is a genuine issue for trial."  *Id.* at 324 (internal quotation marks omitted).  The existence of a factual dispute is insufficient to preclude summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is only "material" if it is capable of affecting the outcome of the litigation.  *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987).  "The rule governing cross-motions for summary judgment . . . is that neither party waives the right to a full trial on the merits by filing its own motion; each side concedes that no material facts are at issue

only for the purposes of its own motion." *Sherwood v. Wash. Post*, 871 F.2d 1144, 1148 n.4 (D.C. Cir. 1989), quoting *McKenzie v. Sawyer*, 684 F.2d 62, 68 n.3 (D.C. Cir. 1982).   In assessing each party's motion, "[a]ll underlying facts and inferences are analyzed in the light most favorable to the non-moving party." *N.S. ex rel. Stein v. District of Columbia*, 709 F. Supp. 2d 57, 65 (D.D.C. 2010), citing *Anderson*, 477 U.S. at 247.

Where a plaintiff proceeds *pro se*, "the Court must take particular care to construe the plaintiff's filings liberally, for such complaints are held 'to less stringent standards than formal pleadings drafted by lawyers.'"   *Cheeks v. Fort Myers Constr. Co.*, 722 F. Supp. 2d 93, 107 (D.D.C. 2010), quoting *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).

## ANALYSIS

Hunter's does not identify with any specificity which findings of the Magistrate Judge he believes are wrong and for what reasons; rather, he generally objects to the recommended disposition and repeats the factual allegations and arguments contained in his motion for summary judgment and opposition to the District's cross-motion.

Hunter spends a significant portion of his objections addressing his 2010 termination, Objections to Magistrates [sic] Judges [sic] Proposed Findings and Recommendations ("Pl.'s Objections") [Dkt. # 72] at 1–2, 5–6, despite the fact that this Court previously dismissed any Title VII claims based on the District's 2010 acts for failure to exhaust administrative remedies, Order (July 15, 2011) [Dkt. # 41].   He attempts to resuscitate those claims by attaching to his objections two documents that he claims are evidence that he did exhaust his administrative remedies.   The first of those documents, which, according to Hunter, "demonstrates Plaintiff filed a complaint with the EEOC in February 2011," Pl.'s Objections at 8, is completely illegible. Ex. 1 to Pl.'s Objections.   The second, which allegedly "shows that Plaintiff also filed a similar

complaint with the DC Office of Human Rights on March 6, 2011 that was never acted on," Pl.'s Objections at 8, appears to be a letter from Hunter dated March 6, 2011, addressed to Gustavo F. Velasques, Director of the District of Columbia Office of Human Rights that begins, "Consistent with Section 2-14013.4 of the DC Human Rights Act, I am filing with the Office of Human Rights a formal complaint of discrimination/retaliation against the DC Government."   Ex. 2 to Pl.'s Objections.

At the outset, the Court notes that it need not consider new evidence that Hunter failed to submit during the motion to dismiss or summary judgment briefing.   Fed. R. Civ. P. 72(b)(3) (stating that the district judge "may" receive further evidence).   Nonetheless, the documents plaintiff has submitted are insufficient to rescue his dismissed claims.   To exhaust administrative remedies under Title VII, a plaintiff must file a charge with the EEOC outlining his allegations. 42 U.S.C. § 2000e-5(e); *see Duberry v. Inter-Con Sec. Systems, Inc.*, -- F. Supp. 2d --, 2012 WL 4923905, at *3 (D.D.C. Oct. 17, 2012).   In the District of Columbia, the charge must be filed within 300 days of the challenged act.   *Duberry*, 2012 WL 4923905, at *3.   Moreover, the plaintiff may only bring suit in federal court within ninety days after the EEOC notifies him of his right to sue through the issuance of a right-to-sue letter, or after a complaint has been pending before the agency or the EEOC for at least 180 days.   42 U.S.C. §§ 2000e-5(f)(1), 2000e-16(c); *see Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995); *Ellison v. Napolitano*, -- F. Supp. 2d --, No. 11-1386, 2012 WL 5381399, at *4–5 (D.D.C. Nov. 4, 2012).   The documents plaintiff submits do not demonstrate that he filed a formal charge with the EEOC, that he received a right-

to-sue letter, or that he filed this suit within 90 days of his notice of the right to sue, or after his

complaint had been pending before the EEOC for at least 180 days.[1]

The remaining claims, which the Court will address in turn, are:   (1) gender

discrimination under Title VII based on the 2008 acts; (2) retaliation based on the 2008 acts; (3)

violation of the D.C. Whistleblower Protection Act based on the 2008 and 2010 acts; and (4)

violation of the D.C. Human Rights Act based on the 2008 and 2010 acts.

I.     **The Court will deny plaintiff's motion for summary judgment and grant defendant's cross-motion as to the remaining portion of Count II (Gender discrimination under Title VII).**

Hunter claims that the District treated him "in a disparate manner" on the basis of his

gender when his managers initially denied his application for participation in the AWS program,

---

[1]     In his objections, Hunter also takes issue with the way discovery proceeded in this case, *i.e.*, plaintiff alleges that he asked for and was denied specifics relating to fitness for duty exams during one of several phone conferences between the parties and the Magistrate Judge; the attorneys refused to turn over any responsive emails out of the more than 8,000 they claim to have reviewed; and the attorneys obstructed justice and unnecessarily delayed this matter.  Pl.'s Objections at 2.  This matter was referred to the Magistrate Judge for full case management. Under Local Rule of Civil Procedure 72.2, a magistrate judge may hear and determine any pretrial motion or matter other than those specified in local rule 72.3.  Discovery disputes are not specified under local rule 72.3.  Any party may file written objections to a magistrate judge's ruling within 14 days after being served with the order of the magistrate judge.  "The objections shall specifically designate the order or part thereof to which objection is made, and the basis for the objection."  LCvR 72.2(b).  Only then will the district judge review the magistrate judge's decision under a clearly erroneous standard.  LCvR 72.2(c).  Since plaintiff has not followed that procedure, the Court will not consider Hunter's complaints about the discovery process. Moreover, the only discovery ruling on the docket – in which the Magistrate Judge sustained defendant's objection to disclosing the names of employees who were administered fitness for duty exams and the reasons for administering those exams – appears to be well within the discretion of the Magistrate Judge on relevance grounds.  Minute Order (Dec. 8, 2011); *see* LCvR 72.2 (a district judge reviews the magistrate judge's order on discovery disputes under a "clearly erroneous or contrary to law" standard).  Finally, since the Court finds that the fitness for duty exam is not an actionable adverse action under Title VII for both disparate treatment and retaliation, Hunter's objections to discovery rulings regarding defendant's reasons for administering fitness for duty exams in other cases ultimately are not relevant to the disposition of this case.

required that he take the fitness for duty examination, and placed him on administrative leave pending the results of the examination.  Pl.'s Mem. at 37–38.

The two essential elements of a gender discrimination claim under Title VII are: (i) that the plaintiff suffered an adverse employment action; and (ii) that the action was based upon the plaintiff's gender.  *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008).

A. <u>As a matter of law, plaintiff has not shown that he suffered any adverse employment action.</u>

As the Magistrate Judge pointed out, not every action by an employer against an employee qualifies as an "adverse employment action" that is protected by Title VII.  *Forkkio v. Powell*, 306 F.3d 1127, 1130 (D.C. Cir. 2002); *Russell v. Principi*, 257 F.3d 815, 818 (D.C. Cir. 2001) ("[N]ot everything that makes an employee unhappy is an actionable adverse action."). An actionable adverse employment action is a "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) (citations omitted).  To ultimately establish an adverse employment action, a plaintiff must show that he "experience[d] materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm."  *Forkkio*, 306 F.3d at 1131.  This harm usually takes the form of "direct economic harm," *Burlington Indus.*, 524 U.S. at 762, affecting, for instance, an employee's grade or salary.  *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003).

None of the actions that Hunter challenges here rises to the level of an adverse employment action.

First, there is no showing that defendant's denial of Hunter's application for the AWS program affected his employment status, such as his grade or salary. *See Taylor*, 350 F.3d at 1293. The denial merely prevented Hunter from changing his work hours to a Monday through Thursday schedule so that he could take Fridays off. Pl.'s Objections at 6. Hunter submits no evidence and, indeed, does not even argue that the denial affected his job responsibilities, his pay, his grade, or his chances for promotion. Although in his objections to the Magistrate Judge's Report and Recommendation, Hunter claims that the denial "adversely impacted Plaintiff physically, mentally and financially," because it prevented him from using Fridays to work on his new home inspection business, Pl.'s Objections at 6, this is not the type of harm that is actionable under Title VII.

Moreover, even if the denial was an "adverse employment action," an employer may cure an adverse employment action before that action becomes the subject of litigation. *Taylor*, 350 F.3d at 1293–94. That is exactly what happened here. The record shows, and Hunter does not dispute, that management approved his renewed application for AWS three weeks after the initial application was denied. *See* OHR Letter at 4.

Nor do the period of administrative leave and fitness for duty examination constitute actionable adverse employment actions. The period of administrative leave was paid, it lasted only ten days, it did not result in disciplinary action being taken, and plaintiff returned to the same job responsibilities, pay, grade, and benefits after it concluded. Pl.'s Mem. at 8–10; Def.'s Mem. at 5. *See Walker v. Johnson*, 501 F. Supp. 2d 156, 171 (D.D.C. 2007) (finding no adverse employment action where employee was paid for the time he spent on administrative leave, no other employment action was taken against him, the investigation concluded that he engaged in no wrongdoing, and he was returned to his former position after the period of leave concluded).

The fitness for duty examination that Hunter completed while on his paid leave, similarly, did not result in any change in Hunter's employment status or benefits.  Although Hunter paid the out-of-pocket co-pay to his physician to perform the tem-minute examination, these indirect costs are not the type of direct economic harm resulting from a change in the terms, conditions, or privileges of employment or future employment opportunities that courts recognize as actionable.

Accordingly, none of the actions that Hunter challenges here constitute the type of adverse employment actions that are actionable under Title VII for discrimination.  This finding alone provides a sufficient basis for the Court to grant defendant's motion for summary judgment as to Count I.  Thus, Hunter's attacks on the credibility of defendant's evidence do not supply the grounds to reject the Magistrate Judge's conclusion.  *See* Pl.'s Objections at 2–5.  It is the plaintiff's burden to show that he has suffered some adverse employment action, *Baloch*, 550 F.3d at 1197 n.2, and Hunter has failed to do so in this case, even if all the evidence he has submitted is assumed to be true.

B. <u>No reasonable jury could find that defendant's actions were motivated by discrimination on the basis of gender.</u>

Even if the Court were to find that Hunter suffered an adverse employment action, no reasonable jury could find that the District's actions were motivated by discrimination on the basis of gender.  Where, as here, a plaintiff puts forth only indirect evidence of discrimination, the court must apply the three-part test that the Supreme Court established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973).  *Taylor v. Small*, 350 F.3d 1286, 1292 (D.C. Cir. 2003).  First, the plaintiff bears the burden of establishing a *prima facie* case of discrimination by a preponderance of the evidence.  *Id.*, citing *Stella v. Mineta*, 284 F.3d 135, 144 (D.C. Cir. 2002).  If the plaintiff meets that burden, the employer must then "articulate a

legitimate, nondiscriminatory reason for its actions." *Id.*, quoting *Stella*, 284 F.3d at 144.  Once

that burden has been met, the burden shifts back to the plaintiff to demonstrate that the

employer's stated reason was pretextual and that the true reason was discriminatory.  *Id.*, citing

*Stella*, 284 F.3d at 144.  At the motion for summary judgment stage, if the employer has asserted

a legitimate non-discriminatory reason for its actions, the court need only ask "whether the

employee produced sufficient evidence for a reasonable jury to find that the employer's asserted

non-discriminatory reason was not the actual reason and that the employer intentionally

discriminated against the employee" on the basis of gender.  *Baloch*, 550 F.3d at 1197 n.2.

(internal quotation marks and citations omitted).

   Here, defendant has submitted legitimate non-discriminatory reasons for the denial of

plaintiff's first application for the AWS program, for placing him on administrative leave, and

for requiring him to take the fitness for duty examination.  As for the AWS application,

defendant submits an email from the CFSA Supervisory Management Services Liaison for the

Office of the Senior Deputy for Administration Latonya Bryant to Hunter, which explains that

plaintiff's AWS request was denied because CPA staff were not eligible for "compressed

schedule A nor Friday's [sic] off."  Email from LaTonya Bryant to Ernest Hunter (July 8, 2008).

The email states that this policy was presented in a staff meeting a month earlier, and that it was

in accordance with section VII.B of the procedures section of the AWS policy.  *Id.*  As for the

fitness for duty examination, defendant submits evidence that CFSA management was concerned

about Hunter's behavior during the August 7, 2008 meeting.  Bryant Decl. ¶¶ 6–8; Higgins

Decl., Ex. I to Def.'s Cross-Mot. ¶¶ 10–12.  At the direction of Ronnie Charles, Human

Resources prepared a letter for Ms. Bryant to sign requiring Hunter to submit to the fitness for

duty exam with paid administrative leave.  Bryant Decl. ¶¶ 9–10.  This complies with District of

Columbia personnel policy, which states that "an employing agency may require a medical examination because of an employee's conduct or performance on the job.  Such an examination shall be ordered only upon approval by the personnel authority of a written request from the agency."  D.C. Personnel Regulations, pt. I, ch. 20B, § 2049.8, Ex. J to Def.'s Cross-Mot.  In addition, the District's policy requires that an employee be given administrative leave for up to ten consecutive workdays for the purpose of taking any examination that his agency has requested him to take in order to continue his or her present job.  6-B DCMR §§ 1266.1, 1266.9 (2009), Ex. 18 to Pl.'s Mot.

Hunter argues that the Court should not place any weight on the declarations of Ms. Bryant and Ms. Higgins because these two witnesses lack credibility.[2]  Pl.'s Objections at 3–4. But that is not the issue.  The question is whether plaintiff has come forward with *evidence* that would tend to show that the employer's stated grounds are pretextual.

Courts consider whether the jury could infer discrimination from "(1) the plaintiff's *prima facie* case, (2) any evidence that the plaintiff presents to attack the employer's proffered explanation, and (3) any further evidence of discrimination that may be available to the plaintiff."  *Waterhouse v. District of Columbia*, 298 F.3d 989, 992–93 (D.C. Cir. 2002), quoting *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1289 (D.C. Cir. 1998).  Courts do not require that the plaintiff present evidence in each of these categories, but they instead assess the plaintiff's challenge to the employer's reason in light of the totality of the circumstances.  *Pierson v. Wash. Metro. Area Transit Auth.*, 821 F. Supp. 2d 360, 367 (D.D.C. 2011), citing *Aka*, 156 F.3d at

---

2        Hunter also opposes the Court's reliance on statements made by Ronnie Charles and Roque Gerald because "the party's [sic] also agreed to not use any witness in support of any dispositive motions that were not made available during discovery."  Pl.'s Objections at 2. Defendant has not submitted any declarations or depositions of these individuals, and the Court does not rely on any statements made by them.

1289.  However, to meet his burden, the plaintiff must demonstrate "both that the [employer's proffered] reason was false, *and* that discrimination was the real reason."  *Weber v. Battista*, 494 F.3d 179, 186 (D.C. Cir. 2007), quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993).[3]

To support his claim that defendant's motive for denying his original AWS application was discriminatory, Hunter submits an affidavit from Jacque McDonald, stating that a female employee, Rhonda Thompson, "maintained her AWS schedule throughout her tenure with the administration."  McDonald Aff., Ex. 2 to Pl.'s Mot. ¶ 16; *see also* Pl.'s Objections at 6; Pl.'s Opp. to Def.'s Cross-Mot. [Dkt. # 68] at 9.  The comparison between Thompson and Hunter, however, is not particularly enlightening because even if the Court treats the statement as true, there is no indication that Thompson's alternate schedule was the same as the schedule that Hunter sought and was denied.  This is particularly important because the letter rejecting Hunter's application indicated that the problem with his application was the specific schedule he was seeking.  This, without any other evidence tying the denial of his application to his gender, is insufficient to meet Hunter's burden of proof.  Moreover, this Court agrees with the Magistrate Judge that the fact defendant approved Hunter's renewed AWS application three weeks after it denied the initial application undermines his argument that the initial denial was discriminatory.

Similarly, Hunter does not meet his burden of proving that there is a genuine dispute of material fact as to whether defendant's actual reason for placing him on administrative leave and requiring the fitness for duty examination was discriminatory.  First, the fact that after Hunter

---

3       Defendant argues that plaintiff must surpass an even higher burden since he is alleging "reverse discrimination" – discrimination against a male employee.  Def.'s Mem. at 8.  Since the Court finds that plaintiff does not even satisfy the ordinary threshold, it declines to determine whether a heightened burden applies.

passed the fitness for duty examination the District immediately permitted him to return to his position with the same pay and benefits weakens his discrimination claim.

In an attempt to show discrimination, Hunter submits a list of employees charged with various performance issues that were not subject to a fitness for duty exam.  Exs. 56–60 to Pl.'s Mot.  However, the list does not show that female employees were treated any differently than male employees.  As the Magistrate Judge pointed out, it is not possible to identify the gender of the employees on the list since the names are redacted.  Moreover, the information about employees whose gender is decipherable by the use of gender-specific pronouns does not show a pattern of differential treatment by gender.

Hunter also makes several assertions that go to the plausibility of the government's proffered reason:

- The two supervisors who recommended the administrative leave and examination lack credibility because of their alleged history of fraud, their misrepresentations to plaintiff regarding the purpose of the August 7 meeting, and misrepresentations they made at the meeting.  Pl.'s Mem. at 37; Pl.'s Objections at 3–5, 7.

- Hunter did not have any prior disciplinary record.  Pl.'s Mem. at 37.

- Management did not follow the correct authorization process.  Pl.'s Mem. at 37; Pl.'s Objections at 7.

- Plaintiff's conduct did not fit the CFSA criteria for issuing a fitness for duty examination.  Pl.'s Objections at 5.

- Management had other less severe options available to them.  Pl.'s Mem. at 10; Pl.'s Objections at 7.

Putting aside the question of whether these assertions are even supported by sufficient evidence, they are ultimately unavailing because none of them purport to link the District's actions to Hunter's gender.  Because Hunter fails to meet his burden, the Court will grant defendant's motion for summary judgment as to Count I.

II.     **The Court will deny plaintiff's motion for summary judgment and grant defendant's cross-motion as to Count II (Retaliation under Title VII).**

In Count II, Hunter alleges that defendant engaged in unlawful retaliation against him, in violation of Title VII, when it denied his AWS application, required him to take the fitness for duty examination, and placed him on administrative leave.  Third Am. Compl. ¶¶ 48–49; Pl.'s Mem. at 37–38.

Like claims for disparate treatment, claims for retaliation based on circumstantial evidence are analyzed under the *McDonnell Douglas* burden-shifting framework.  *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009).   To make a *prima facie* case of retaliation, plaintiff must show "(1) that he engaged in statutorily protected activity; (2) that he suffered a materially adverse action by his employer; and (3) that a causal link connects the two."  *Id.*, citing *Wiley v. Glassman*, 511 F.3d 151, 155 (D.C. Cir. 2007).

A.  No reasonable jury could conclude that Hunter suffered a materially adverse action.

As with the disparate treatment claim, Hunter does not show that his employer's denial of his AWS application satisfies the standard for an adverse action in the retaliation context.  It is true that "some actions not sufficiently adverse under a disparate treatment theory may sustain a retaliation claim," *Manuel v. Potter*, 685 F. Supp. 2d 46, 66 (D.D.C. 2010) (citations omitted), but as with disparate treatment, not every bad act suffered by an employee is sufficient.  In the retaliation context, an action is "materially adverse" if it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks and citation omitted).

In *Burlington Northern*, the Supreme Court described how courts must consider the particular circumstances of an individual plaintiff.  The Court explained, for example, that "[a] schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school-age children."  *Id.* at 69.  There are no facts in the record that would show that the denial of Hunter's AWS application, which was approved three weeks later, would be more than a "trivial harm" to a reasonable person in plaintiff's position.  *See id.* at 68.  Hunter asserts in his objections to the Magistrate Judge's report and recommendation that his schedule interfered with a new business he was starting: "[p]laintiff indeed had started a Home Inspection business and his desire to be off on Fridays was related to his business pursuits."  Pl.'s Objections at 6.  This is Hunter's first mention of any concrete affects the denial may have had on him, and it is not supported by any evidence in the record.  *See Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (refusing to consider allegation that employer hired applicant with "less experience" because affiant provided no "supporting facts" for her claim).  Moreover, the interference of his schedule with his side business aspirations does not constitute the kind of "material adversity" that supports a retaliation claim because the inability to make the change at issue here would not have dissuaded a reasonable person in Hunter's position from making or supporting a charge of discrimination.  *Burlington N.*, 548 U.S. at 68.

Similarly, no reasonable jury could find that the ten days of administrative leave constitute materially adverse actions.  As described above, plaintiff was reinstated into exactly the same position that he was in before the period of administrative leave.  There is no evidence that his duties, responsibilities, pay grade, or chances for promotion changed.  Paid suspension alone is not enough to rise to the level of materially adverse unless it causes some further harm

or hardship.  *Compare Greer v. Paulson*, 505 F.3d 1306, 1317–18 (D.C. Cir. 2007) (holding that suspension with back pay was materially adverse because plaintiff presented evidence of a demonstrable effect involving objectively tangible harm, which included personal bankruptcy, two real estate foreclosures, and negative marks on her employment record), *with Harper v. Potter*, 456 F. Supp. 2d 25, 29 (D.D.C. 2006) (holding seven-day suspension was not materially adverse because although it was disciplinary in nature, plaintiff was able to remain on the job and in pay status).

The fitness for duty examination does not constitute an actionable materially adverse action either.  As explained above, Hunter remained on paid administrative leave while the examination was conducted, he was able to have his own personal physician conduct the exam, and once it was completed, he returned to the same position he had been in before.  Hunter's unsupported assertion in his objection to the Magistrate Judge's report and recommendation that "[e]ach of the acts by Defendant adversely impacted Plaintiff physically, mentally and financially, manifesting itself in insomnia, and anxiety," Pl.'s Objections at 6, is not supported by any evidence in the record and does not show that the fitness for duty examination would dissuade a reasonable employee from making or supporting a charge of discrimination.  *See Greene*, 164 F.3d at 675.

    B.  Hunter has not submitted sufficient evidence for a reasonable jury to find that he engaged in protected activity under Title VII.

Even if the Court were to consider these events to be materially adverse actions, there is no evidence that Hunter engaged in an activity that is protected under Title VII.  As with discrimination claims, once the defendant has articulated a legitimate non-retaliatory reason for its actions, "the central question on summary judgment is whether the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory

reason was not the actual reason and that the employer intentionally . . . retaliated against the employee" for engaging in a protected activity. *Geleta v. Gray*, 645 F.3d 408, 413 (D.C. Cir. 2011) (internal quotation marks and citations omitted).

"[O]pposition to an unlawful employment practice qualifies as protected activity even if it may have occurred outside of the EEO context." *Rattigan v. Gonzales*, 503 F. Supp. 2d 56, 77 n.7 (D.D.C. 2007), citing *Broderick v. Donaldson*, 437 F.3d 1226, 1232 (D.C. Cir. 2006) (internal quotation marks omitted). However, the complaint must in some way allege discrimination made unlawful by Title VII. *Williams v. Spencer*, -- F. Supp. 2d --, 2012 WL 3264569, at *8 (D.D.C. Aug. 13, 2012), citing *Broderick*, 437 F.3d at 1232; 42 U.S.C. § 2000e-3(a). Accordingly, the complaints and reports that Hunter identifies as his "protected activities" must have in some way alleged discrimination on the basis of race, color, religion, gender or national origin. *See* 42 U.S.C. §§ 2000e-2, 2000e-3(a).

Hunter identifies the following acts as his protected activities: (1) he "reported mismanagement and fraudulent activity to the OIG"; (2) he "spoke out against and complained about discriminatory policies and practices"; and (3) he "filed an EEO complaint." Third Am. Compl. ¶ 48. As a preliminary matter, Hunter cannot rely on his EEO complaint as a protected activity because he submitted the complaint on November 18, 2008 – over four months after defendant denied plaintiff's original AWS application and three months after it issued the administrative leave and fitness for duty examination. Hunter cannot make a plausible argument that defendant's actions were taken in retaliation for something that occurred afterward.

As to the first category of protected activity – Hunter's reports of mismanagement and fraudulent activity to the OIG – nothing in the record demonstrates that his complaint to the OIG alleged discrimination on the basis of the characteristics protected by Title VII, so the Court

cannot find it to be protected activity.[4]   In fact, the affidavit of Jacque McDonald that plaintiff submits in support of his motion for summary judgment states that the OIG complaint reported allegations of fraud that Hunter witnessed within the agency; it says nothing about allegations of discrimination on the basis of a protected category.  McDonald Aff., Ex. 2 to Pl.'s Mot. ¶¶ 8–15.[5]

As to the second category of protected activity – Hunter's complaints about discriminatory policies and practices – Hunter attaches several letters that he submitted to CFSA management and other District officials as evidence.  *See, e.g.*, Exs. 4, 7–9 to Pl.'s Mot. However, these letters do not allege discrimination on the basis of the protected characteristics either.   The first letter identifies Hunter's concerns as "lack of experience in key positions, cronyism and discriminatory practices."  July 1 Letter at 1.  However, even though Hunter uses the word "discriminatory," the substance of the letter does not allege any discrimination on the basis of race, color, religion, or national origin.  Instead, it alleges discrimination on the basis of cronyism – a category that is not protected by Title VII.  The statement that comes closest to a protected complaint states:

> I am deeply disappointed with some of the negative and unprofessional behavior of the current Management within this administration.  In recent weeks I have been approached by different coworkers at different times, informing me of malicious comments being said about me, including questioning my competency from a Professional level and attacking my character by questioning my coworkers as to whether I smoke crack.  I have worked for the District for many years and I refuse to be treated in such a manner, especially by individuals who do not have the prerequisite experience to perform their duties.

---

4      Plaintiff attaches a document to his Motion for Summary Judgment, which he labels "Email to Hotline Inspector General 7-28-08," but the document is illegible.  *See* Ex. 5 to Pl.'s Mot.

5      Moreover, Hunter allegedly submitted the complaint on July 28, 2008 – nearly a month after the denial of his AWS application, so Hunter cannot establish that the complaint caused the department to deny his AWS application.

*Id.*  He goes on to suggest that the department would be better served by new management instead of "those who promote themselves and their cronies into positions."  *Id.*    Since he does not even allude to discrimination on the basis of the categories protected by Title VII, this Court cannot find that the letter constitutes a "protected activity" under that statute.

Of the other letters to CFSA management and other District officials that Hunter submits as evidence of retaliation, some post-date the alleged retaliatory actions, and therefore will not be considered by the Court.  *See, e.g.*, Letter from Ernest Hunter to Yasmine Mitchell (Aug. 19, 2008), Ex. 9 to Pl.'s Mot.; Letter from Ernest Hunter to Mayor Fenty (Oct. 27, 2008), Ex. 21 to Pl.'s Mot.  Those that pre-date the alleged retaliatory actions generally reassert the same allegations and similarly do not contain any mention of discrimination on the basis of the categories protected by Title VII.  *See, e.g.*, August 6 Letter; Email from Ernest Hunter to Gerald Roque, Ex. 7 to Pl.'s Mot. (Aug. 7, 2008) (illegible); Email from Ernest Hunter to Gerald Roque, Ex. 8 to Pl.'s Mot. (Aug. 7, 2008); Email from Earnest Hunter to Ronnie Charles, Ex. 19 to Pl.'s Mot. (Aug. 7, 2008).

Since the Court finds no evidence that plaintiff engaged in activity that is protected under Title VII prior to the allegedly retaliatory actions, it cannot find that the actions were taken in retaliation for protected activity.

C.  <u>No reasonable jury could find that defendant's actions were motivated by retaliation for Hunter's protected activity.</u>

Finally, even if the Court were to find that the initial denial of Hunter's AWS application and the imposition of the fitness for duty exam and administrative leave constitute adverse actions, and that Hunter's complaints were protected under Title VII, there is no evidence of a causal relationship between the allegedly retaliatory actions and the complaints that predated them.  "The [C]ourt reviews each of the three relevant categories of evidence – prima facie,

pretext, and any other – to determine whether they either separately or in combination provide sufficient evidence for a reasonable jury to infer retaliation." *Jones*, 557 F.3d at 679 (internal quotation marks and citation omitted).

As to the AWS application denial, the only evidence that Hunter can point to in order to support his retaliation claim is the temporal proximity between his complaint to Ronnie Charles and the denial of his application.[6]   That alone is insufficient.  *Hamilton v. Geithner*, 666 F.3d 1344, 1359 (D.C.Cir. 2012), quoting *Woodruf v. Peters*, 482 F.3d 521, 530 (D.C. Cir. 2007) (explaining that even where there is temporal proximity between the protected activity and the alleged retaliatory action, it must be "[kept] in mind that 'positive evidence beyond mere proximity is required to defeat the presumption that the [employer's] proffered explanations are genuine.'").

Hunter also fails to present sufficient evidence to support his claim that the fitness for duty examination and administrative leave were retaliatory.  Hunter first presents an affidavit of Jacque McDonald, a former employee of the Contracts Procurement Administration of the Child and Family Services Agency beginning in April 2007, that states that based on her personal experiences within the agency, she believes that "Hunter was retaliated against because of his various complaints and treated different than other employees."  McDonald Aff. ¶ 18.  This statement of opinion, of questionable admissibility, does little to establish actionable retaliation under Title VII because the rest of the affidavit reveals that McDonald believes Hunter was retaliated against for his complaints about fraud and cronyism, not complaints about discrimination on the basis of one of the protected categories under Title VII.  *See id.* ¶¶ 8–19.

---

6       The letter to Ronnie Charles is the only complaint that Hunter identifies that occurred before his AWS application was denied.

Hunter also points to the fact that defendant did not satisfy the necessary requirements for imposing the fitness for duty examination as evidence of pretext.  Pl.'s Mem. at 37; Pl.'s Objections at 5.  Hunter questions the authority of Y. Mitchell to authorize the examination. Pl.'s Mem. at 37; Pl.'s Objections at 4.  But the fitness-for-duty letter is actually signed by Stan Spaght, who is identified as a Human Resources Manager.  Fitness for Duty Letter.  There appears to be no dispute over Spaght's authority to authorize the examination.  Plaintiff also argues that defendant never documented any of the three circumstances in which a fitness for duty examination is required under the governing policy.  Pl.'s Mem. at 37; Pl.'s Objections at 4. Under District of Columbia policy, a fitness for duty examination may be required when an employee:  "(1) [m]ay pose a hazard or risk to him or herself or others; (2) [h]as been 'off from work' for an extended period of time due to illness; or (3) [i]s unable to perform duties of his or her position of record that were previously performed."  Procedures for Fitness-for-Duty Medical Examinations, D.C. Dept of Human Resources District Personnel Manual Issuance System E-DPM Instruction No. 20B-5 (Jan. 3, 2011), Ex. 17 to Pl.'s Mot. at 1(b).  The notice letters provided to plaintiff by defendant explain that the leave and exam were being imposed because of Hunter's "erratic behavior" at the August 7, 2008 meeting.  Ex. 12–14 to Pl.'s Mot.  In light of his behavior, the letters express concern about Hunter's ability to perform the essential functions of his job.  *Id.*  Hunter vehemently disputes these allegations.  *See* Pl.'s Mem. at 5; Pl.'s Objections at 3–4 ("Plaintiff specifically objects to the mischaracterizations attributed to his behavior.").  Yet, he submits no evidence to support his assertions that his managers were to blame for the contentious tone of the meeting, *see* Pl.'s Mem. at 5, and that defendant's characterization of his behavior is false, *see* Pl.'s Objections at 3–4.  Hunter's own denial of his managers' account of the August 7, 2008 meeting is not sufficient for a reasonable jury to find

retaliation; rather, the plaintiff must provide *proof* that the employer is lying about its non-retaliatory justification.  *See Brady*, 520 F.3d 490, 495 (D.C. Cir. 2008) (stating that although "it is common at this stage for an employee to attempt to demonstrate that the employer is making up or lying about the underlying facts that formed the predicate for the employment decision," that is ordinarily insufficient for permitting a jury to conclude that the employer is lying about the underlying facts"); *McGrath v. Clinton*, 674 F. Supp. 2d 131, 145 (D.D.C. 2009) (plaintiff's only evidence that employer was lying about its stated reasons were "his own allegations," which was insufficient to prove retaliation).  Accordingly, the Court finds that Hunter has not presented any basis on which a reasonable jury could find that defendant's asserted reason for imposing the fitness-for-duty exam is pretextual.

Hunter's remaining evidence consists of (1) the proximity between his complaints and the allegedly retaliatory actions, and (2) his later dismissal, which the agency justified as a reduction in force.  Temporal proximity is not sufficient on its own to support a claim of retaliation at the summary judgment stage.  *Hamilton*, 666 F.3d at 1359.  And, while evidence of acts that form the basis of an unexhausted claim of discrimination – such as Hunter's dismissal – may serve as background evidence to support an exhausted claim, *Ellison*, 2012 WL 5381399, at *5, to survive summary judgment, the plaintiff must provide some evidence that retaliation was the real reason for the adverse action.  *See Weber*, 494 F.3d at 186.  Even taken together, these allegations would not form a sufficient basis for a reasonable jury to find that defendant engaged in actionable retaliation against Hunter because Hunter presents insufficient proof that defendant is lying about its asserted justification for its actions and no proof that the real reason was retaliation.

Since the Court finds that the allegedly retaliatory actions Hunter claims to have suffered do not constitute actionable material adverse actions under Title VII, that the complaints he claims to have motivated them are not protected under Title VII, and that no reasonable jury could find that the real reason for defendant's actions was retaliation, the Court will grant defendant's motion for summary judgment as to Count II.

### III.   The Court will not exercise supplemental jurisdiction over Hunter's state law claims.

Counts IV and V of the Third Amended Complaint allege violations of the D.C. Whistleblower Protection Act, Third Am. Compl. ¶¶ 57−61, and the D.C. Human Rights Act, *id.* ¶¶ 62−66. Because all of the federal claims in this case have now been disposed of, the Court no longer has original jurisdiction over the case and will decline to exercise supplemental jurisdiction over these state law claims.

Although Hunter objects to the Magistrate Judge's recommendation that the Court dismiss his state law claims, his arguments are unavailing. District courts may exercise supplemental jurisdiction over state claims that "form part of the same case or controversy" as federal claims over which they have original jurisdiction. 28 U.S.C. § 1367(a). In its discretion, the Court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction. *Id.* § 1367(c)(3). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7 (1988); *see Edmondson & Gallagher v. Alban Towers Tenants Ass'n,* 48 F.3d 1260, 1267 (D.C.Cir.1995). This Court agrees with the Magistrate Judge that the balance of factors favors declining to exercise jurisdiction over the remaining state law claims.

This result will not deprive Hunter of a fair resolution to his claims because there are no apparent barriers to his ability to re-file those claims in Superior Court. *See* 28 U.S.C. § 1367(d) (tolling the statute of limitations for supplemental state law claims while the claim is pending and for a period of thirty days after it is dismissed unless State law provides for a longer tolling period); *see also Robertson v. District of Columbia*; No. 09-1188, 2010 WL 3238996, at *9 (D.D.C. Aug. 16, 2010) (declining to exercise supplemental jurisdiction over state law claims because the court had not invested substantial time and resources in them and there were no apparent reasons why plaintiff could not re-file them in Superior Court).

While Hunter argues that judicial economy favors retaining the state law claims because the parties have already engaged in pertinent discovery for this case, that discovery will also form the backdrop for the Superior Court proceeding. Moreover, litigation of the state law claims may require further discovery concerning the 2010 acts, which are no longer a part of this case. Therefore, the Court finds that judicial economy would not be served by exercising jurisdiction over the remaining claims. *See Edmondson*, 48 F.3d at 1266 (finding dismissal appropriate where "the district court has invested virtually no time on any of the issues left to be resolved in [the] case [and where] there has been no trial . . . and little analysis.").

Although the Court is mindful that the litigants may be required to expend some additional time and expense in the event that Hunter decides to re-file the state law claims in D.C. Superior Court, *see* Pl.'s Objections at 8, these considerations do not outweigh the factors favoring dismissal. Importantly, "in the interest of comity, federal judges should refrain from deciding cases founded solely on local law when the requirements for diversity jurisdiction are not present." *Lowe v. District of Columbia*, 669 F. Supp. 2d 18, 31−32 (D.D.C. 2009) (internal quotation marks and citations omitted). And as the Magistrate Judge indicated, the D.C.

Whistleblower Protection Act presents an undeveloped body of law that is more suitable for adjudication in Superior Court. *See Cannon v. District of Columbia*, --- F. Supp. 2d ---, 2012 WL 2673097 at *12 (D.D.C. July 6, 2012) (remanding D.C. Whistleblower Protection Act claim to Superior Court given the undeveloped state of the law); *Lowe*, 669 F. Supp. 2d at 31−32 (same); *see also Doe v. Bd. on Prof'l Responsibility of the D.C. Court of Appeals*, 717 F.2d 1424, 1428 (D.C. Cir. 1983) ("[A] federal District Court opinion is no substitute for an authoritative decision by the courts of the District of Columbia."). As to the D.C. Human Rights Act claim, the Court has expended little judicial energy on it up to this point. *See Anderson v. Holder*, 647 F.3d 1165, 1174 (D.C. Cir. 2011) ("With no federal claims remaining in the case, the district court also properly declined to exercise supplemental jurisdiction over Anders's claim under the D.C. Human Rights Act."); *Mitchell v. Yates*, 402 F. Supp. 2d 222, 229 n.4 (remanding D.C. Human Rights Act claims for resolution in Superior Court after dismissing federal claims).

Accordingly, the Court declines to exercise supplemental jurisdiction over Counts IV and V of the Third Amended Complaint.

**CONCLUSION**

For the reasons stated above, the Court will adopt the Magistrate Judge's recommendation in full.   It will deny Hunter's motion for summary judgment and grant defendant's cross-motion as to the remaining portions of Counts I and II.   It will also dismiss Counts IV and V without prejudice.   Hunter will have thirty days from the date of dismissal to re-file his state law claims in the Superior Court of the District of Columbia.   A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  November 29, 2012